OPINION
{¶ 1} Defendants-appellants Clifford Browning and Lori Browning appeal the April 15, 2002 Judgment Entries which found them each guilty of one count of Failing to Confine a vicious dog, and sentenced them accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On March 8, 2002, the Fairfield County Dog Warden filed several complaints alleging appellants had failed to obtain proper liability insurance for dogs appellants owned and kept on their property in violation of R.C. 955.22(E). The complaints also included three counts for each appellant of failing to properly confine dogs, in violation of R.C. 955.22(D). On March 14, 2002, the Dog Warden visited appellants' home a second time, and filed additional charges for failure to obtain insurance and failing to properly confine dogs. At that time, the dog warden seized 15 dogs.
 {¶ 3} The matter proceeded to a bench trial on April 2, 2002. By agreement of the parties, the charges against appellants were consolidated and tried together. The trial court amended all charges prior to trial which had alleged violations of R.C. 955.22(D) to violations of R.C. 955.22(D)(1). Further, at the close of the State's case in chief, the trial court dismissed all remaining counts relating to failure to obtain appropriate insurance.
 {¶ 4} At trial, the parties stipulated Clifford and Lori Browning are husband and wife and that they jointly own and raise the dogs in question at their residence in Fairfield County. Appellants also stipulated fourteen of the fifteen dogs seized were pit bulls.
 {¶ 5} The parties agreed the primary issue before the trial court was whether the dogs seized were "vicious dogs" as defined by R.C. 955.11. Further, the trial court had to determine whether one of the dogs, described as an american bull dog, belonged to a breed commonly known as pit bulls. Finally, the trial court had to determine whether the dogs were confined in compliance with the requirements of R.C. 955.22(D)(1).
 {¶ 6} After hearing the testimony of the parties and examining the exhibits admitted into the evidence, the trial court found the one animal was an american bull dog and not a pit bull dog pursuant to the statute. Further, the trial court found one of the pit bull dogs, a female approximately four years old, was the Browning family pet, and not a vicious dog pursuant to the statute.
 {¶ 7} The trial court found the remaining thirteen pit bull dogs seized to be "vicious dogs" as that term is defined in R.C. 955.11. Further, the trial court found that none of the vicious dogs had been properly confined as required by R.C. 955.22(D)(1). The trial court acknowledged the dogs were humanely treated, and all of them may have been secured by a chain. However, the trial court found appellants failed to comply with the statutory confinement requirements as none of the various cages had locks, the fence around the yard did not have a lock, and was open at the driveway. Further, one or more of the cages did not have a top. For these reasons, the trial court found appellants guilty of each of the remaining charges of failure to properly confine a dog pursuant to 955.22(D)(1).
 {¶ 8} The matter proceeded to a sentencing hearing on April 11, 2002. Upon motion of appellants, the trial court found each of the offenses to be allied offenses of similar import within the meaning of R.C. 2941.25(A). Accordingly, the trial court determined appellants could be convicted of only offense each.
 {¶ 9} The trial court took testimony at the sentencing hearing. The State called William Folwarczny, an agent for the Ohio Department of Agriculture, to introduce a seventeen minute tape prepared by the Attorney General's office entitled "Dog Fighting and Gangs, Police Training." Over the strenuous objection of appellants, the trial court viewed this videotape. Before viewing the videotape, the trial court agreed with appellants' trial counsel the tape did not depict appellants' property, dogs, or anything directly related to the particular animals which were the subject of the complaint.
 {¶ 10} The State also presented the testimony of Dog Warden Deputy Mike Miller. Deputy Miller testified two of the dogs showed highly aggressive behavior. Further, Deputy Miller identified these two dogs, circling photographs to identify the animals.
 {¶ 11} Appellants called Marie Browning, Mr. Browning's mother, to testify as to the peaceful nature of her son's dogs. Ms. Browning testified she had no fear of the dogs and had never known the dogs to exhibit aggressive behavior. She further felt it was completely safe for her eight year old grandson to be around the dogs.
 {¶ 12} Additionally, the trial court made a personal inspection of the seized dogs at the Humane Society prior to sentencing and found all but two dogs showed no aggressive behavior. After taking this new evidence, the trial court convicted appellants of one count each of failing to properly confine a vicious dog. The trial court imposed a $750 fine on each appellant, ordered each to serve 180 days in jail, but suspended the jail terms on the condition of two years good behavior. Each sentencing entry incorporated an additional "Entry," filed on the same day, ordering the two dogs the trial court found to exhibit aggressive behavior (the same dogs identified by the Dog Warden as aggressive) to be humanely destroyed, and ordering appellants to pay restitution to the Fairfield County Human Society along with fines and costs.
 {¶ 13} Appellants assign as error:
 {¶ 14} "I. THE TRIAL COURT'S VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 15} "II. THE TRIAL COURT ERRED WHEN IT CONDUCTED ITS OWN EXTRAJUDICIAL INVESTIGATION OF THE DOGS."
 {¶ 16} "III. THE TRIAL COURT ERRED WHEN IT CONSIDERED THE VIDEO TAPE, "DOG FIGHTING AND GANGS, POLICE TRAINING."
 I. {¶ 17} In appellants' first assignment of error, they maintain the trial court's verdict was not supported by sufficient evidence. Specifically, appellants maintain the State failed to prove beyond a reasonable doubt the identity of each dog listed in each count. Further, appellants contend they rebutted the finding each of their dogs were vicious. We disagree.
 {¶ 18} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus.
 {¶ 19} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, appellants' convictions were based upon insufficient evidence. As noted above, while appellants were found guilty of a number of counts, the trial court entered only one conviction on a violation of R.C. 955.22(D). R.C. 955.22(D) states, in relevant part:
 {¶ 20} "(A) As used in this section, "dangerous dog" and "vicious dog" have the same meanings as in section 955.11 of the Revised Code.
 {¶ 21} "* * *
 {¶ 22} "(D) Except when a dangerous or vicious dog is lawfully engaged in hunting or training for the purpose of hunting and is accompanied by the owner, keeper, harborer, or handler of the dog, no owner, keeper, or harborer of a dangerous or vicious dog shall fail to do either of the following:
 {¶ 23} "(1) While that dog is on the premises of the owner, keeper, or harborer, securely confine it at all times in a locked pen that has a top, locked fenced yard, or other locked enclosure that has a top, except that a dangerous dog may, in the alternative, be tied with a leash or tether so that the dog is adequately restrained * * *."
 {¶ 24} "Vicious Dog" is defined in R.C. 955.11 to mean:
 {¶ 25} "(A)(4) * * * a dog that, without provocation and subject to division (A)(4)(b) of this section, meets any of the following:
 {¶ 26} "(i) Has killed or caused serious injury to any person;
 {¶ 27} "(ii) Has caused injury, other than killing or serious injury, to any person, or has killed another dog.
 {¶ 28} "(iii) Belongs to a breed that is commonly known as a pit bull dog. The ownership, keeping, or harboring of such a breed of dog shall be prima-facie evidence of the ownership, keeping, or harboring of a vicious dog."
 {¶ 29} A dog may be deemed a vicious dog under RC955.11(A)(4)(a)(iii) if the dog belongs to the breed commonly known as pit bull dog, even if such dog has not, without provocation, killed or caused injury to any person, or killed another dog. State v. Ferguson
(1991), 76 Ohio App.3d 747, 749. RC 955.11(A)(4)(a)(iii) allows a defendant dog owner to rebut the state's prima facie showing that his dog is a vicious dog even if he admits to the truth of the element contained in the first sentence of RC 955.11(A)(4)(a)(iii), that the dog in question belongs to the breed commonly known as a pit bull dog. Id.
"However, evidence of the absence of the elements contained in RC955.11(A)(4)(a)(i) and 955.11(A)(4)(a)(iii) standing alone, isinsufficient as a matter of law to rebut the state's prima facie showing that the dog is a "vicious dog" as defined by RC 955.11(A)(4)(a)(iii)." (emphasis added). Id.
 {¶ 30} Accordingly, appellants' convictions will stand if the State proved appellants failed to properly confine even one vicious dog. However, in order to demonstrate their convictions were based upon insufficient evidence, appellants would have to demonstrate each of their dogs were not vicious, or if vicious, each dog was properly confined.
 {¶ 31} At trial, Mr. Browning testified none of his dogs were vicious. He further testified none of the dogs held by the Dog Warden had ever attacked a human being. Rather, the dogs had been raised as family members. Tr. at 186-188. This was the only rebuttal testimony presented by appellants at trial.
 {¶ 32} Even if this evidence was believed, the trial court could still conclude the statutory presumption each of the pit bulls seized was vicious was not sufficiently rebutted.
 {¶ 33} Further, we note Mike Miller testified two of the dogs behaved in an aggressive fashion toward him. Because the trial court was free to believe or disbelieve the testimony of the witnesses, we find the trial court's decision these two animals were vicious was supported by competent, credible evidence. Because Mr. Browning conceded some of the cages containing his dogs did not have tops or working padlocks, we find the trial court's decision was supported sufficient evidence.
 {¶ 34} Accordingly, appellants' first assignment of error is overruled.
 II. {¶ 35} In appellants' second assignment of error, they maintain the trial court erred in conducting an extrajudicial investigation of the dogs. Appellants contend the trial court's viewing of the dogs during the sentencing phase violated his due process rights. We disagree.
 {¶ 36} Before going to view the dogs, the trial court had found appellants guilty of fifteen counts of failing to confine vicious dogs. Accordingly, as of the date of sentencing, the trial court had already determined these dogs were vicious pursuant to the statute. R.C. 955.99, the penalty statute for Chapter R.C. 955, permits a trial court to destroy any dog which was the basis of a violation of R.C. 955.22(D). Further, the trial court heard evidence from Deputy Miller indicating two of the dogs had been extremely aggressive. The trial court's viewing of the dogs only confirmed this fact. This new information did not change appellants' convictions but only influenced the trial court's decision about the destruction of two dogs. We note again, the trial court was within its rights to destroy all of the dogs. Accordingly, we can find no abuse of discretion in the trial court's decision to order two of the dogs destroyed. Further, we can see no prejudice to appellants in the trial court's decision to personally view the dogs after trial but before sentencing.
 {¶ 37} Appellant's second assignment of error is overruled.
 III. {¶ 38} In appellants' third assignment of error, they maintain the trial court erred in considering the videotape entitled "Dog Fighting and Gangs, Police Training" during the sentencing phase.
 {¶ 39} We agree with appellant the videotape was irrelevant to the proceedings. The trial court noted the film did not depict the appellants' property, dogs, or anything directly related to appellants' dogs. However, the trial court stated it found the information relevant as to whether vicious animals generally should be destroyed. As noted above, the trial court was well within its rights to destroy all of the dogs upon a finding that they were vicious and appellants had failed to properly confine them. Because the trial court had already found appellants guilty and found the dogs to have been vicious, we find no prejudice in the trial court's viewing of the video tape.
 {¶ 40} Further, we see no constitutional violation in the trial court's admission of the tape. Because the tape was viewed in the sentencing phase, it had no impact on the trial court's determination of appellants' guilt or innocence. While the trial court did order two of the dogs destroyed, the statute permitted the destruction of all of the animals.
 {¶ 41} Even if we would find the trial court's review of the tape to be in error, in light of our disposition of appellants' first and second assignments of error, we find any such error to be harmless.
 {¶ 42} Appellant's third assignment of error is overruled.
 {¶ 43} The April 15, 2002 Judgment Entries of the Fairfield Municipal Court are affirmed.
By: Hoffman, P.J. Wise, J. and Boggins, J. concur.
topic: vicious dogs.